UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DEXTER C. RHINES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-11-262 |
| | § | |
| SALINAS CONSTRUCTION | § | |
| TECHNOLOGIES, LTD., | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment. (D.E. 25.) Defendant argues that there is insufficient evidence to support Plaintiff's claims of racial discrimination, hostile work environment, and retaliation; accordingly, Defendant requests that the Court enter judgment as a matter of law in its favor. For the reasons stated below, the Court denies Defendant's Motion for Summary Judgment.

**I.    JURISDICTION**

This action seeks damages for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**II.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a).  In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

The movant has the initial burden of showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met its initial burden, the burden then shifts to the non-moving party to demonstrate that summary judgment is not appropriate. *Rivera*, 349 F.3d at 247.

### III.   FACTUAL SUMMARY

The following facts are drawn from the evidence presented as viewed in the light most favorable to Plaintiff.  On July 21, 2009, Plaintiff was hired by Defendant Salinas Construction Technologies, Ltd. for the position of form-setter and finisher.  Plaintiff was the only African American employee at the company. (D.E. 28-3 at 3.)  Plaintiff was frequently referred to by his co-workers, supervisor, and foreman as "guero."  Plaintiff's foreman, Baldemar Gelista (Gelista), constantly and openly referred to Plaintiff as

"guero", despite Plaintiff's requests that he not refer to him in this manner. (Rhines Dep. 7:5–7, 27:10–18, 28:18, 68:5–7, 87:5–7.)  Plaintiff's co-workers also referred to him using the following racial slurs: "mayate," "nigger," and "negrito feo." (D.E. 28-3 at 3; Rhines Dep. 8:4–11, 69:25–70:7, 74:8–12, 85:24, 126:1–8, 126:22–24.)

Plaintiff's co-workers told inappropriate racial jokes, using Plaintiff as the punch line. (D.E. 28-3 at 3; Rhines Dep. 67:15–16.)  Plaintiff's immediate supervisor, David Garcia (Garcia), told a joke about a "nigger trap" in front of a group of construction workers with whom Plaintiff worked. (Rhines Dep. 69:25–70:9.)  Garcia also sent Plaintiff text messages with inappropriate racial content. (D.E. 28-3 at 3; Rhines Dep. 77:1–11; 126:24.)  On one occasion, Garcia told Plaintiff, "Get the fuck away from me, I don't want no mayate around while I'm eating." (D.E. 28-3 at 3; Rhines Dep. 74:10–11.)  And once, while Plaintiff was unloading a truck, Garcia stated, "Let the mayate unload the bricks by himself," and Plaintiff's co-workers sat around and watched him unload the truck. (D.E. 28-3 at 3.)  Garcia and Gelista harassed Plaintiff the most, with Garcia being the primary instigator of the harassment. (Rhines Dep. 67:22–68:3.)

Plaintiff alleges that he was required to perform jobs that were not required of other similarly situated, non-African American employees, his personal tools were sometimes not returned or were returned broken and unusable, he was harassed when he requested that a pair of jumper cables he lent the company be returned, and he was denied permission by his immediate supervisor to see the time cards for a two-day job for which he believed he had not been properly compensated. (D.E. 28-3 at 3; Rhines Dep. 7:15–18, 10:14–13:23, 14:2–11, 60:11–62:7, 67:13–18.)

In April 2010, Plaintiff spoke with the head supervisor for the Corpus Christi area, Jose Davila (Davila), and wrote a letter to Defendant's main office to complain about the name-calling and other race-based discrimination and harassment he experienced at the company. (Rhines Dep. 15:1–9.)  Defendant made an inquiry into the name-calling and other issues.  Davila spoke with Plaintiff's immediate supervisor, Garcia, and his foreman, Gelista. (D.E. 25-7 at 1; Salinas Dep. 9:6–11:11.)  Gilbert Salinas, the owner of the construction company, also talked to Garcia about Plaintiff's complaints. (Salinas Dep. 11:12–21.)  Plaintiff's supervisors, co-workers, and foreman all denied that the alleged discriminatory conduct occurred. (Salinas Dep. 20:2–8.)

Following his complaint, Plaintiff's co-workers continued to refer to him as "guero", but the other name-calling stopped for a period of at least two weeks. (Rhines Dep. 28:16–29:1, 39:6–15.)  Sometime after Plaintiff filed his complaint with the company's main office, Garcia confronted Plaintiff and told him not to contact the corporate office again to complain. (Rhines Dep. 62:8–10, 101:5–9; 119:12–16.)  On May 27, 2010, Plaintiff filed a charge of discrimination with the EEOC. (D.E. 28-3 at 3.) Garcia confronted Plaintiff a second time, shortly after he filed the charge of discrimination, and told him that he should not have done such a thing. (Rhines Dep. 99:21–100:2.)

At the end of May 2010, Plaintiff went to Garcia to request time off to attend to his dying brother, who was in intensive care, and to support his mother through his brother's death and help her make funeral arrangements. (Rhines Dep. 22:14–15.) Plaintiff's request was granted, and Plaintiff took off work from May 29, 2010 through

4 / 17

June 9, 2010. (Rhines Dep. 102:13–24.) When he returned to work on June 10, 2010, Plaintiff was laid off, despite there being considerable unfinished work on the construction project. (Rhines Dep. 84:7–24; Salinas Dep. 28:8–13.) The owner made the decision to lay Plaintiff off and Garcia informed Plaintiff of the decision. (Salinas Dep. 21:23–22:4.) Plaintiff was the only employee laid off at this time. (Salinas Dep. 20:18–23.) Plaintiff's layoff occurred within weeks of his filing a charge of discrimination with the EEOC. (Rhines Dep. 99:5–102:12.)

After Plaintiff was laid off, he attempted to amend his EEOC charge of discrimination. Plaintiff sent a statement to the EEOC indicating that he was laid off in retaliation for his filing of the charge of discrimination and requesting an amendment of his charge. (D.E. 28-3 at 27; Rhines Dep. 97:14–17.) The EEOC responded to Plaintiff's request by a letter dated June 12, 2010 with an amendment to the charge. (D.E. 28-3 at 28.) Plaintiff was instructed to sign, date, and return the amendment within five days. (*Id.*) Plaintiff never signed and returned the amendment. Plaintiff is unsure if he ever received the amendment as he had to break his lease and relocate shortly after he was laid off. (Rhines Dep. 105:5–12.)

IV.   ANALYSIS

    A.   **Hostile Work Environment Claim**

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Where a plaintiff relies on circumstantial evidence of discrimination, the Fifth Circuit employs the Title VII burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Plaintiff carries the initial burden of establishing a prima facie case of discrimination by "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977).

To establish a prima facie case of a hostile work environment, Plaintiff must demonstrate the following: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his protected status; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew, or should have known, of the harassment in question and failed to take prompt remedial action. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Defendant challenges elements (4) and (5).

Harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). The Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). To be actionable, the alleged conduct must be "both objectively and subjectively offensive, one that a reasonable

person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Sporadic and isolated incidents of racial comments or jokes do not trigger relief under Title VII. *Snell v. Suffolk Co.*, 782 F.2d 1094, 1103 (2d Cir. 1986); *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1394 (8th Cir. 1983). "Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher*, 524 U.S. at 788). However, a working environment that is permeated by racial slurs, discrimination, intimidation, ridicule, insult and harassment is abusive, threatens the emotional and psychological health of the employee, and alters the conditions of employment; *See Harris*, 510 U.S. at 21; *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987) ("It is well established that 'a working environment dominated by racial slurs constitutes a violation of Title VII.' " (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981))); *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1358 (11th Cir. 1982).

     In the case at hand, Plaintiff was constantly referred to by his co-workers and supervisors as mayate, guero, negrito feo, and nigger; he was subjected to racially inappropriate jokes; and he was sent racial texts on his cell phone. Additionally, Plaintiff was made to unload a truck of bricks by himself while his co-workers watched; he was required to perform jobs that were not required of other employees; and he was admonished when he complained about the discrimination.

The Court concludes that a reasonable jury could find that the racial slurs, discriminatory statements, ridicule, intimidation, harassment, and other disparate treatment were sufficiently severe or pervasive to alter a term, condition, or privilege of Plaintiff's employment. *See Walker v. Thompson*, 214 F.3d 615, 619–22 (5th Cir. 2000) (concluding that a hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir. 1991) (concluding that claim survived summary judgment where the plaintiff was subjected to "nigger jokes" for a ten-year period and the plaintiff's workstation was adorned with "a human-sized dummy with a black head"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001) (reversing summary judgment in favor of defendant where the plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey").

An employer may avoid liability under Title VII if it takes prompt remedial action likely to prevent the discrimination from recurring. *See Hirras v. Nat'l. R.R. Passenger Corp.*, 95 F.3d 396, 399–400 (5th Cir. 1996). The employer must conduct a prompt and thorough investigation of the complaint, and then based on that investigation, implement appropriate remedial and/or disciplinary measures aimed at correcting the problem. *Waymire v. Harris Cty.*, 86 F.3d 424, 428 (5th Cir. 1996). "Whether an employer's response to discriminatory conduct is sufficient 'will necessarily depend on the particular facts of the case,' " including the severity of the harassment, the steps taken to deal with the harassment, whether there was a recurrence of discrimination, and the employee's diligence in taking advantage of available remedial measures within the company.

*Hirras*, 95 F.3d at 399–400 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989)).

After Plaintiff complained to Defendant, Davila, the head Corpus Christi supervisor, spoke with Garcia and Gelista. These individuals were alleged to have been the primary instigators of the discriminatory conduct, and when questioned, they denied having engaged in any discriminatory conduct. There is no evidence that any remedial actions were taken to correct the situation following the investigation or that Plaintiff was questioned about whether the alleged discrimination had ended.

Plaintiff was diligent in his efforts to address the ongoing harassment, and he attempted to take advantage of the corrective opportunities available to him at the company. Plaintiff called the company's main office to register his complaint. Then, he wrote a letter to the office. The discrimination improved for a short while, but after a couple weeks, the situation deteriorated and the harassment continued. Moreover, following his complaint, Plaintiff was told by his immediate supervisor not to make any more complaints with the company's main office. Having exhausted the corrective opportunities with the company, Plaintiff filed an EEOC charge of discrimination. The Court concludes that a reasonable jury could find that the employer knew or should have known about the harassment in question and failed to take prompt remedial action.

Plaintiff has presented sufficient evidence on summary judgment to establish a prima facie hostile work environment claim. Having met this initial burden, there arises a presumption that the employer unlawfully discriminated against the employee. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Defendant must rebut this

presumption by articulating a legitimate, non-discriminatory reason for its conduct. *McDonnell Douglas*, 411 U.S. at 802. Defendant does not assert a legitimate, non-discriminatory reason for the alleged discrimination. Accordingly, with regard to his hostile work environment claim, Plaintiff has presented sufficient evidence to survive summary judgment.

### B. Retaliation Claim

Defendant requests that the Court grant summary judgment in its favor on Plaintiff's claim of retaliation because (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff failed to present sufficient evidence demonstrating a causal connection between Plaintiff's filing of an EEOC charge of discrimination and Defendant's employment decision, and (3) Defendant laid Plaintiff off for a legitimate, non-retaliatory purpose, and Plaintiff has failed to demonstrate that its stated reason for the employment decision was pretextual.

#### 1. Exhaustion

Before a plaintiff may file suit in federal court under Title VII, he is required to file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000); *see also Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 793 (S.D. Tex. 2011). For instance, where a plaintiff files a charge of discrimination alleging only racial discrimination, he cannot bring an action in federal

court alleging age discrimination. However, where a plaintiff files a charge of discrimination and is terminated following the filing of the charge, a retaliation claim will not be subjected to the same strict rules on exhaustion as other claims.

> [W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.
>
> There are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

*Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981); *see also Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 302 (4th Cir. 2009) ("[a]ll other circuits that have considered the issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court"); *Gottlieb v. Tulane University*, 809 F.2d 278, 284 (5th Cir. 1987). Additionally, where a federal court discrimination claim under Title VII can reasonably be expected to have grown out of an EEOC charge investigation, administrative exhaustion of the claim is not necessary. *See Hernandez*, 820 F. Supp. 2d at 793–94.

In the case at hand, Plaintiff filed a charge of discrimination with the EEOC on May 27, 2010, alleging both racial discrimination and retaliation. (D.E. 28-3 at 3.) In his affidavit provided to the EEOC, Plaintiff alleged that he was subjected to retaliation for complaining about a protected employment practice. (D.E. 28-3 at 20.) On June 10,

2010, Plaintiff was terminated from his employment. On June 16, 2010, Plaintiff sent a letter to the EEOC advising them of his termination and requesting that the EEOC amend his charge of discrimination to include a retaliation claim based on the termination. (D.E. 28-3 at 27.) On June 17, 2010, the EEOC mailed Plaintiff an amendment of his charge for signature, but Plaintiff never returned the amendment. Plaintiff intimates that he likely never received the amendment because he relocated shortly after his termination.

In his federal court complaint, Plaintiff does not allege a new form of discrimination; rather, he seeks damages for acts of retaliation that allegedly occurred after and as a result of his filing a charge of discrimination with the EEOC. As noted above, the Fifth Circuit does not require exhaustion for retaliation claims that arise out of the filing of an EEOC charge of discrimination. Additionally, Plaintiff's claim that he was laid off in retaliation for filing an EEOC charge of discrimination is closely related to his original claim of retaliation. Thus, Plaintiff's subsequent retaliation claim reasonably would have fallen within the scope of the EEOC investigation, especially given the fact that Plaintiff wrote to the EEOC informing them of his termination and seeking to amend his charge of discrimination. To dismiss Plaintiff's retaliation claim based solely on his failure to sign and return the amendment to his charge of discrimination would constitute an unjust and needless procedural barrier.

### 2. *Prima Facie Case of Retaliation*

To establish a prima facie case of retaliation under Title VII, Plaintiff has the burden to prove (1) that he participated in a protected activity, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the

protected activity and the adverse action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). Plaintiff engaged in a protected activity when he complained to Defendant about alleged acts of racial discrimination in the workplace in April 2010 and when he filed a charge of discrimination with the EEOC in June 2010. Defendant claims there is no evidence Defendant knew Plaintiff filed an EEOC charge of discrimination; and therefore, there is no evidence Defendant retaliated against Plaintiff for filing the charge. Defendant further argues that Plaintiff's complaint to the company about racial discrimination in April 2010 is too far removed from his lay off in June 2010 to establish a causal connection. (D.E. 25 at 16–17; D.E. 29 at 5–6.)

"If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Public Facility Mngmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)(citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994)). Consequently, Plaintiff must produce some evidence that the individual who made the decision to terminate him knew that Plaintiff had filed an EEOC charge of discrimination. *See Washington v. Veneman*, 109 F. App'x 685, 692 (citing *Chaney*, 179 F.3d at 168); *Lara v. Kempthrorne*, 673 F.Supp.2d 504, 520 (S.D. Tex. 2009).

Plaintiff has not produced any direct evidence that Defendant knew about the filing of the EEOC charge of discrimination at the time of the employment decision. Nevertheless, there is considerable circumstantial evidence that Defendant knew of the charge. First, Title VII and its implementing regulations require that an employer be

given notice of the filing of a charge of discrimination within ten days of its filing with the EEOC. 42 U.S.C. § 2000e–5(b)&(e)(1); 29 CFR § 1601.14.  In a small company like Salinas Construction, it seems unlikely that Gilbert Salinas, the owner and person who made the decision to lay Plaintiff off, would not have had knowledge of the filing of a charge of discrimination by one of his employees.  Defendant was a small, family-owned construction company, and at the time of the decision, there were just four people in charge of human resources: Gilbert Salinas, Daniel Salinas, Angela Salinas, and Mike Salinas. (Salinas Dep. 23:15–24:11.)  The company had one small office in Pleasanton, Texas, with one secretary, and very few employees. (Salinas Dep. 8:13–19.)

Second, Plaintiff testified that his immediate supervisor, Garcia, knew that he had filed a charge of discrimination because after he filed the charge, Garcia told him that he "shouldn't have done that."  Garcia never referenced the EEOC charge, but based on the timing of the incident, Plaintiff believed he was referring to the charge of discrimination and not his earlier complaint to Defendant's main office. (Rhines Dep. 99:21–101:21.)

Third, when an adverse employment action is taken in very close temporal proximity to a protected activity, this may be sufficient evidence of causation, at least for a prima facie case of retaliation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' "); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007) ("temporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation"); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th

Cir. 2001) ("Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."). The Fifth Circuit has specifically found that a lapse of five days was "sufficient to provide a 'causal connection' that enables [a plaintiff] to satisfy the third prong of the prima facie case of [his] retaliation claim[]." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). In the case at hand, Plaintiff filed his charge of discrimination with the EEOC on May 27, 2010. The EEOC was required to send notice to Defendant by June 6, 2010. Plaintiff was terminated on June 10, 2010, four days later.

Accordingly, the Court concludes that Plaintiff has provided sufficient evidence from which a reasonable jury could find a causal connection between the protected activity and the adverse employment action.

### 3. But For Cause of Termination

Defendant argues that its motivation for laying Plaintiff off was non-retaliatory and Plaintiff has failed to produce any evidence that retaliation was a motivating factor in the employment decision. (D.E. 25 at 7.) Defendant asserts that it laid Plaintiff off because of a lack of work at the company, because he had missed several days of work to attend to family issues, and because Plaintiff had requested additional time off to care for his mother. (D.E. 25 at 17; Salinas Dep. 21:6–11.) The Court finds that these reasons, if believed, would permit a trier of fact to find that Plaintiff's lay off was non-retaliatory.

When an employer comes forward with a legitimate, non-retaliatory reason for the adverse employment action, the inference of discrimination introduced by the employee's prima facie showing drops from the case, and the focus shifts to the ultimate

determination of whether the protected conduct was the "but for" cause of the adverse employment decision. *Long v. Eastfield College*, 88 F.3d 300, 305 (5th Cir. 1996).[1] At this point, the burden shifts to the employee to show that the protected activity was a substantial element in the employer's decision to terminate him, and that he would not have been terminated in the absence of the protected activity. *Id*. at 305 n. 4. To survive summary judgment, the employee must show that there is a "conflict in substantial evidence" on the issue of causation such that "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id*. at 308.

Plaintiff has shown that the lay off occurred within very close temporal proximity to his filing of an EEOC charge of discrimination (Rhines Dep. 99:5–102:12), that no other employees were laid off at that time (Salinas Dep. 20:18–23), that there was still considerable work left to be completed on the project at the time he was terminated (Rhines Dep. 84:7–24; Salinas Dep. 28:8–13), that Defendant previously provided a false statement to the EEOC concerning Plaintiff's allegations of racial harassment (D.E. 25-6 at 1), and that, on two occasions, the second occurring shortly after the filing of his EEOC complaint, his supervisor warned him about filing complaints of racial harassment in the workplace (Rhines Dep. 62:8–10, 99:21–101:21, 119:12–16).

There is sufficient evidence in the record from which reasonable jurors could find that Plaintiff's filing of the EEOC complaint was the but for cause of his lay off.

---

[1] The "but for" causation determination is similar to the "causal link" element of the prima facie case for retaliation, but requires a higher standard of proof than that required to establish a causal connection between the protected activity and the adverse action for a prima facie case of retaliation. *Long*, 88 F.3d at 305 n. 4.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's retaliation claim.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (D.E. 25) is **DENIED**.

ORDERED this 7th day of August, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE